## UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

DUAYNE BOWLING,
    Petitioner,

Case No. 1:12-cv-183

    vs.

Spiegel, J.
Litkovitz, M.J.

WARDEN, LONDON
CORRECTIONAL INSTITUTION,
    Respondent.

**REPORT AND
RECOMMENDATION**

    Petitioner, an inmate in state custody at the London Correctional Institution in London,

Ohio, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In the

original petition filed on February 21, 2012,[1] petitioner presents six grounds for relief. (*See* Doc.

1). On June 27, 2013, the Court allowed petitioner to amend the petition to add a seventh ground

for relief and ordered respondent to file a supplemental return of writ responding to the

additional claim. (Doc. 17; *see also* Doc. 15). At this juncture, it appears that the parties have

filed all pleadings necessary for final disposition of the case. Therefore, this matter is now

before the Court on the petition as amended and "merits brief"; respondent's return of writ and

supplemental return of writ responding to petitioner's allegations; and petitioner's "traverse"

briefs in reply to the return of writ and supplemental return of writ. (Docs. 1, 6, 7, 10, 18, 21).

## I. FACTUAL BACKGROUND

    The Ohio Court of Appeals, First Appellate District, has provided the following summary

of the facts giving rise to petitioner's criminal prosecution based on evidence presented at his

---

[1] As this Court noted in a prior Order (*see* Doc. 17, p. 2 n.1), the filing date of a federal habeas petition submitted by a *pro se* prisoner is the date on which the prisoner provides his papers to prison authorities for mailing to the Court. *See Houston v. Lack*, 487 U.S. 266 (1988); *see also Miller v. Collins*, 305 F.3d 491, 497-98 (6th Cir. 2002); *Goins v. Saunders*, 206 F. App'x 497, 499 n.1 (6th Cir. 2006). Here, petitioner has averred in his habeas petition that he placed the petition in the prison mailing system on February 21, 2012. (*See* Doc. 1). Therefore, in accordance with the federal mailbox rule, it is presumed that the petition was filed on that date.

jury trial:[2]

> Harrison Police Officer Chris MacMurdo testified that on October 6, 2009, he had stopped a car because a routine registration check had revealed that the car's owner had an open warrant. Bowling was driving the car. The owner, Christina Polley, was not in the car at the time of the stop. When questioned by MacMurdo, Bowling admitted that he did not have a valid license. Because Bowling appeared to be very nervous, MacMurdo called for a second officer before he requested that Bowling exit from the car. Shortly before the second officer arrived at the scene, Polley walked up to the car. She later gave MacMurdo permission to search the car.

> Upon searching the car, MacMurdo found six loose pseudoephedrine pills, a beverage can containing a "thick, white sludge," coffee filters with white residue on them, and a shotgun. After the car was towed to police headquarters, MacMurdo found receipts for products that were commonly used to make methamphetamine, two bottles of fuel additive, a box of pseudoephedrine pills, a metal pipe adapter with a shutoff valve, measuring spoons covered with white residue, mason jar lids covered with white residue, and a lithium battery. MacMurdo also found a digital camera and flash drive that had pictures that showed Bowling in a store holding up rubber tubing and drain cleaner, as well as a table with foil-covered bottles and a pill bottle filled with a white substance.

> MacMurdo stated that after he had found the shotgun and the coffee filters, he had handcuffed Bowling and read him his *Miranda* rights. When MacMurdo asked Bowling if the residue on the filters was methamphetamine, Bowling admitted that it was. MacMurdo further testified that, although he had not been able to cycle the shotgun when he found it in the car, he had been able to make the shotgun function within a short time after it had been seized.

> Sergeant Greg Morgan with the Hamilton County Sheriff's Department testified that he had been trained to identify methamphetamine laboratories. According to Morgan, the items that were found in the car were items used for the production of methamphetamine. And Brian Scowden, Chief Drug Analyst for the Hamilton County Crime Laboratory, testified that some of the powder that was recovered from the car had tested positive for methamphetamine.

(Doc. 7, Ex. 12, pp. 2-3) (footnote omitted).

---

[2] The Ohio appellate court summarized the facts in a decision issued on December 22, 2010, affirming petitioner's conviction and sentence on direct appeal. (*See* Doc. 7, Ex. 12). 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence." In the absence of clear and convincing evidence to rebut the Ohio Court of Appeals' factual findings quoted below, those findings are presumed to be correct. *See McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004).

## II. PROCEDURAL HISTORY

### State Trial Proceedings

In October 2009, the Hamilton County, Ohio, grand jury returned an indictment charging petitioner with one count of illegal assembly or possession of chemicals for the manufacture of drugs in violation of Ohio Rev. Code § 2925.041; one count of aggravated possession of drugs in violation of Ohio Rev. Code § 2925.11(A) with a firearm specification; and one count of having weapons while under disability in violation of Ohio Rev. Code § 2923.13(A)(3). (Doc. 7, Ex. 1).

A jury trial was initially scheduled to commence on January 26, 2010. (*See id.*, Ex. 12, p. 1 & Trial Tr. 1). On that day, petitioner's counsel requested that an independent expert on the manufacture of methamphetamine be appointed and that the trial be continued "both to allow that and to be able to address further discovery from the State." (*Id.*, Trial Tr. 5-6). The trial court denied the request for appointment of an independent expert, but granted a two-week continuance of the trial. (*Id.*, Ex. 12, p. 1 & Trial Tr. 9-10, 12). The second trial proceeding commenced on February 10, 2010. (*Id.*, Trial Tr. 17). However, on February 11, 2010, after the jury was empaneled, both petitioner and his counsel requested that counsel be allowed to withdraw from the case due to "a complete breakdown in communication" between them and that a new attorney be appointed to represent petitioner. (*See id.*, Trial Tr. 138-42, 148). The court granted the request and declared a mistrial. (*Id.*, Ex. 2 & Trial Tr. 148). The court appointed another attorney to represent petitioner and rescheduled the trial date to April 13, 2010. (*Id.*, Ex. 12, p. 1). On April 9, 2010, petitioner's new counsel filed motions requesting an independent drug analysis and the appointment of an independent expert on the manufacture of methamphetamine. (*Id.*, Exs. 3-4 & Ex. 12, pp. 1-2). Petitioner's counsel also requested a continuance of the trial date. (*See id.*, Trial Tr. 160). The trial court denied all three motions. (*Id.*, Exs. 5-6 &Trial Tr. 161-62).

3

The matter then proceeded to trial before a jury, which found petitioner guilty as charged. (*See id.*, Ex. 7). On April 23, 2010, following a sentencing hearing held on April 19, 2010, the trial court issued a Judgment Entry sentencing petitioner to an aggregate prison term of twelve (12) years, which consisted of the following consecutive terms of imprisonment: five (5) years for the illegal assembly offense; one (1) year for the aggravated drug possession offense; one (1) year on the firearm specification attached to the aggravated drug possession charge; and five (5) years for the weapons offense. (*Id.*, Ex. 8).

### State Appeal Proceedings

With the assistance of new counsel for appeal purposes, petitioner timely appealed to the Ohio Court of Appeals, First Appellate District. (Doc. 7, Ex. 9). In the appellate brief filed by counsel on petitioner's behalf, petitioner raised six assignments of error:

1. The trial court erred to the prejudice of appellant by denying his motion for an independent laboratory analysis.

2. The trial court erred to the prejudice of the appellant when it denied his motion for the appointment of an independent expert on methamphetamine manufacture.

3. The trial [court] err[e]d to the prejudice of appellant by entering a judgment of conviction for having a weapon under disability where the jury's verdict was not supported by sufficient evidence.

4. The trial [court] erred to the prejudice of appellant by entering a judgment of conviction for a gun specification in Count II where the jury's verdict was not supported by sufficient evidence.

5. The trial court erred to the prejudice of appellant and abused its discretion by sentencing him to maximum, consecutive sentences.

6. The trial court erred to the prejudice of appellant by entering a judgment that was contrary to law because it imposed consecutive sentences without making findings required by R.C. 2929.14(E)(4).

(*Id.*, Ex. 10).

On December 22, 2010, the Ohio Court of Appeals issued a Judgment Entry overruling

4

petitioner's assignments of error and affirming the trial court's judgment. (*Id.*, Ex. 12).

Petitioner next pursued a timely *pro se* appeal to the Ohio Supreme Court. (*See id.*, Ex. 13). In his memorandum in support of jurisdiction, petitioner asserted the following propositions of law:

1. Tr[ia]l court denied defendant due process and statutory right when it request[ed] defendant to show a particul[ar]ized need for a[n] independent laboratory ana[]lysis.

2. The trial court denies the defendant due process of law when it . . . refused to appoint an expert witness for a[n] indigent defendant who shows that an expert would be helpful to his defense and that he cannot receive a fair trial without the expert's assistance.

3. The State knowingly used circumstantial evidence to make and sustain the convictions of having a weapon[] under disability, and a gun specification, knowing the evidence was not only insufficient but was in fact Tampered with. A violation of R.C.§2921.12 (F3).

4. Pursuant to R.C. §2929.14(E)(4), A trial court "MUST" make specific findings to justify the imposition of consecutive sentences. A trial court is derelict in it[]s duty when it imposes consecutive sentences without making any such findings. A violation of division (B) of R.C.§2921.44 (M1).

5. "All" counsel for the defendant failed to fully perform their duties as prescribed by law in this action, Thereby rendering defendant defenseless.

(*Id.*, Ex. 14).

On April 6, 2011, the Ohio Supreme Court denied petitioner leave to appeal and summarily dismissed the appeal "as not involving any substantial constitutional question." (*Id.*, Ex. 16).

### Delayed Application To Reopen The Direct Appeal

On November 13, 2012, over a year and a half after the Ohio Supreme Court issued the final entry in the appeal proceedings and over eight months after petitioner commenced the instant federal habeas action, petitioner filed a *pro se* application with the Ohio Court of Appeals, First Appellate District, requesting that the direct appeal be reopened. (Doc. 18, Ex.

18). In the application filed pursuant to Ohio R. App. P. 26(B), petitioner claimed in part that his appellate counsel was ineffective for failing to assert as an assignment of error that "Defendant-Appellant is subject to a void sentence as a result of allied offense(s)." (*Id.*). The State opposed the motion, arguing in part that petitioner had not shown "good cause" for the untimely application, filed nearly two years after journalization of the appellate judgment in December 2010 and thus long past the 90-day deadline set forth in Rule 26(B)(1) for filing a timely reopening application. (*See id.*, Ex. 19).

On December 11, 2012, the Ohio Court of Appeals overruled petitioner's application for reopening of the direct appeal on the ground that petitioner had "failed to provide sufficient reasons for failure to timely file his application." (*Id.*, Ex. 21). Petitioner thereafter pursued a timely appeal to the Ohio Supreme Court, which issued an entry on March 13, 2013, "declin[ing] to accept jurisdiction of the appeal." (*Id.*, Exs. 22-23, 25).

**Federal Habeas Corpus**

As discussed above, petitioner commenced the instant habeas corpus action in February 2012, within a year after the direct appeal proceedings concluded and over eight months before petitioner filed his delayed reopening application with the Ohio Court of Appeals. In the petition, which was docketed on March 2, 2012, petitioner presents the following grounds for relief:[3]

> **Ground One:** Petitioners right to a fair trial and due process of law, as guaranteed by the Fifth and Fourteenth Amendment of the United States Constitution were violated when the trial court denies his request to appoint and fund an independent laboratory analysis after a defendant makes a written request for one under the provision of Ohio Revised Code § 2925.51(E).
>
> **Ground Two:** Petitioners right to a fair trial and due process of law, As guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, were violated when the trial court refused to appointed an expert witness for an indigent defendant who shows that an expert would be helpful to

---

[3] In setting forth petitioner's grounds for relief, the undersigned recognizes that petitioner's allegations, which are quoted verbatim from the petition, contain numerous spelling and grammatical errors.

defendants defense and that he cannot receive a fair trial without the expert's assistance.

**Ground Three:** Petitioners right to a fair trial and due process of law, As guaranteed by the fifth and fourteenth amendments to the united states constitution, were violated when the trial court entered a judgment of conviction for having a weapon under disability where the jury verdict was not supported by sufficient evidence.

**Ground Four:** Petitioners right to a fair trial and due process of law. As guaranteed by the Fifth and Fourteenth amendment to the United States Constitution, were violated when the trial court entered a judgment of conviction for a gun specification in count II where the jury's verdict was not supported by sufficient evidence.

**Ground Five:** The trial court erred to the prejudice of the defendant, and abused it's discretion by sentencing him to maximum, consecutive sentences, without First making specific findings to justify the imposition of consecutive sentences.

**Ground Six:** Petitioners right to a fair trial and due process of law, As guaranteed by the Sixth and Fourteenth amendments to The United States Constitution were violated when **"All"** counsels for the defendant failed to fully perform their duties as prescribed by law in this case, Thereby rendering defendant defenseless.

(Doc. 1, pp. 21-24). On December 7, 2012, petitioner filed a motion to amend the petition to add a seventh ground for relief, which was granted on June 27, 2013. (Docs. 15, 17). In Ground Seven, petitioner asserts a claim, which was recently exhausted in the state reopening proceedings, challenging the imposition of consecutive sentences for "allied offenses of similar import." (*See id.*; *see also* Doc. 18, Ex. 18).

Respondent has filed a return of writ and supplemental return of writ in response to the petition, as amended on June 27, 2013. (Docs. 7, 18). Respondent argues that petitioner procedurally defaulted and has waived the claims alleged in Grounds One, Two, Six and Seven. (Doc. 7, Brief, pp. 16-22, 42-50; Doc. 18, Brief, pp. 4-10).[4] Respondent also contends that the state-law claim alleged in Ground Five is not cognizable in this federal habeas proceeding and that, in any event, petitioner procedurally defaulted and has waived any federal constitutional

---

[4] It is noted that respondent has also argued that the claim alleged in Ground Seven is procedurally barred from review on statute-of-limitations grounds. (Doc. 18, Brief, pp. 13-16).

claim that has been asserted in that ground for relief. (Doc. 7, Brief, pp. 38-40). Finally, respondent argues that petitioner has not demonstrated he is entitled to relief based on the merits of his claims. (Doc. 7, Brief, pp. 22-36, 41-42, 50-54; Doc. 18, Brief, pp. 11-13). Petitioner has filed briefs in reply to both the return of writ and supplemental return of writ. (Docs. 10, 21).

## III. OPINION

### A. Petitioner Has Waived The Double Jeopardy Claim Alleged In Ground Seven, Which He Presented To The State Courts In His Delayed Reopening Application As The Basis For An Ineffective Assistance Of Appellate Counsel Claim

In Ground Seven of the amended petition, petitioner claims that he was multiply punished for the same offense in violation of the Constitution's Double Jeopardy Clause because he was improperly sentenced under Ohio law to consecutive terms of imprisonment for allied offenses of similar import. (*See* Doc. 15). In the supplemental return of writ filed in response to the added ground for relief, respondent argues in part that petitioner procedurally defaulted and has waived the claim, which he belatedly raised to the state courts as an example of ineffective assistance by his appellate counsel in the delayed application for reopening of the direct appeal. (Doc. 18, Brief, pp. 4-10). Respondent's argument has merit.

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action. *See* 28 U.S.C. § 2254(b)(1), (c); *see also Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir. 1985). If the petitioner fails to fairly

present his constitutional claims through the requisite levels of state appellate review to the state's highest court, or commits some other procedural default that prevents a merit-based review of the federal claims by the state's highest court, he may have waived the claims for purposes of federal habeas review. *See O'Sullivan,* 526 U.S. at 847-48; *Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989).

It is well-settled under the procedural default doctrine that the federal habeas court may be barred from considering an issue of federal law from a judgment of a state court if the judgment rests on a state-law ground that is both "independent" of the merits of the federal claim and an "adequate" basis for the state court's decision. *See Harris,* 489 U.S. at 260-62. The Supreme Court has stated:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default, and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Such a default may occur if the state prisoner files an untimely appeal, *Coleman*, 501 U.S. at 750, if he fails to present an issue to a state appellate court at his only opportunity to do so, *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994), or if he fails to comply with a state procedural rule that required him to have done something to preserve the issue for appellate review. *United States v. Frady*, 456 U.S. 152, 167-69 (1982); *Simpson v. Sparkman*, 94 F.3d 199, 202 (6th Cir. 1996).

In the usual case, the adequate and independent state ground doctrine will not apply to bar consideration of a federal claim on habeas corpus review unless the last state court rendering a judgment in the case "clearly and expressly" states that its judgment rests on a state procedural bar. *Harris,* 489 U.S. at 263; *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). In

9

those cases where the last state court to render a reasoned opinion explicitly relies on a procedural bar, the court will presume that a later unexplained order did not silently disregard the procedural default and consider the merits of the claim. *Ylst v. Nunnemaker,* 501 U.S. 797, 803-04 (1991).

The rule precluding federal habeas corpus review of claims rejected by the state courts on state procedural grounds applies only in cases where the state rule relied on by the courts is deemed "adequate" or, in other words, involves a "firmly established and regularly followed state practice" at the time that it was applied. *Ford v. Georgia,* 498 U.S. 411, 423-24 (1991); *Richey v. Mitchell,* 395 F.3d 660, 679 (6th Cir.) (citing *White v. Schotten,* 201 F.3d 743, 751 (6th Cir. 2000)), *rev'd on other grounds,* 546 U.S. 74 (2005) (per curiam); *Warner v. United States,* 975 F.2d 1207, 1213 (6th Cir. 1992); *see also Rideau v. Russell,* 342 F. App'x 998, 1002 (6th Cir. 2009). To be considered regularly followed, a procedural rule need not be applied in every relevant case, but rather "[i]n the vast majority of cases." *Dugger v. Adams,* 489 U.S. 401, 410 n.6 (1989); *see also Byrd v. Collins,* 209 F.3d 486, 521 (6th Cir. 2000).

The Sixth Circuit employs a three-prong test, which was initially established in *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986), to determine if a claim is procedurally defaulted under the adequate and independent state ground doctrine:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction. . . . Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.

*Hoffner v. Bradshaw*, 622 F.3d 487, 495 (6th Cir. 2010) (quoting *Jacobs v. Mohr,* 265 F.3d 407, 417 (6th Cir. 2001) (in turn quoting *Maupin*)), *cert. denied,* 131 S.Ct. 2117 (2011); *see also Johnson v. Bradshaw*, 493 F. App'x 666, 669 (6th Cir. 2012). Under *Maupin* and as discussed above, if the three prerequisites are met for finding a claim is procedurally defaulted under the

10

adequate and independent state ground doctrine, federal habeas corpus review of the defaulted claim is precluded unless the petitioner can demonstrate cause for and prejudice from his procedural default or that failure to consider the defaulted claim will result in a "fundamental miscarriage of justice." *Hoffner*, 622 F.3d at 495 (citing *Maupin*, 785 F.2d at 138); *Johnson,* 493 F. App'x at 669. *See also Coleman*, 501 U.S. at 750; *Harris,* 489 U.S. at 262; *Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In this case, the double jeopardy claim alleged in Ground Seven was procedurally defaulted in the state courts because petitioner did not assert it as an assignment of error on direct appeal to the Ohio Court of Appeals or as a proposition of law on further appeal to the Ohio Supreme Court. (*See* Doc. 7, Exs. 10, 14). Petitioner did allege in his application for reopening of the appeal that his appellate counsel was ineffective for failing to present the underlying claim of error on direct appeal. (*See* Doc. 18, Ex. 18). However, because petitioner never presented the double jeopardy claim to the Ohio appellate courts as an independent assignment of error, but rather only as example of appellate counsel's ineffectiveness, the claim is waived absent a showing of cause and prejudice or that a fundamental miscarriage of justice will occur if it is not addressed herein.

Petitioner has argued ineffective assistance of appellate counsel as "cause" for his procedural default in the direct appeal proceedings. (*See* Doc. 21, pp. 9-11). Ineffective assistance of counsel may constitute cause for a procedural default. *See, e.g., Murray,* 477 U.S. at 488. However, in order to establish cause based on that argument, the ineffective assistance of counsel claim itself must not be procedurally defaulted. *See Edwards v. Carpenter,* 529 U.S. 446, 452 (2000); *Landrum v. Mitchell,* 625 F.3d 905, 934 (6th Cir. 2010), *cert. denied,* 132 S.Ct. 127 (2011). Here, the ineffective assistance of appellate counsel claim asserted as "cause" for

petitioner's default of the underlying double jeopardy claim is procedurally defaulted because petitioner did not file a timely reopening application with the Ohio Court of Appeals, and the state appellate court relied on that state procedural ground in denying the application.

As the Ohio Court of Appeals recognized by citing the Ohio Supreme Court's decisions in *State v. Hoffner*, 860 N.E.2d 1021 (Ohio 2007), and *State v. LaMar*, 812 N.E.2d 970 (Ohio 2004), as support for its refusal to reopen the appeal (*see* Doc. 18, Ex. 21), Ohio R. App. P. 26(B) provides that a reopening application based on an ineffective assistance of appellate counsel claim must be filed "within ninety days from journalization of the appellate judgment unless the applicant shows good cause for filing at a later time." *See also Hoffner*, 860 N.E.2d at 1022-23; *LaMar*, 812 N.E.2d at 971.  Here, petitioner failed to comply with that rule when he filed his reopening application on November 13, 2012, nearly 20 months after the 90-day period expired on March 22, 2011 from the December 22, 2010 appellate-judgment journalization date. (*See* Doc. 7, Ex. 14; Doc. 18, Ex. 18).

The Ohio Court of Appeals was the only state court to issue a reasoned decision in the reopening proceedings.  The court actually enforced the state procedural bar by clearly and expressly stating as the sole ground for its decision that petitioner had "failed to provide sufficient reasons for failure to timely file his application" within the requisite 90-day period. (Doc. 18, Ex. 21).  The state appellate court relied on an independent and adequate state procedural ground in overruling the reopening application, because the 90-day filing deadline and "good cause" requirement set forth in Ohio R. App. P. 26(B) were "firmly established" and "regularly followed" by the time they were applied in this case.  *See Monzo v. Edwards*, 281 F.3d 568, 577 (6th Cir. 2002); *see also Landrum*, 625 F.3d at 934; *Hoffner v. Bradshaw*, 622 F.3d 487, 504 (6th Cir. 2009), *cert. denied*, 131 S.Ct. 2117 (2011); *Lloyd v. Warden, Ross Corr. Inst.*, No. 1:10cv169, 2011 WL 6980846, at *7 & n.5 (S.D. Ohio May 3, 2011) (Litkovitz, M.J.)

(Report & Recommendation), *adopted*, 2012 WL 70619 (S.D. Ohio Jan. 10, 2012) (Spiegel, J.).[5]

The Ohio Supreme Court's later entry declining jurisdiction to hear the appeal must be presumed

to rely on the same procedural default. *See, e.g.*, *Knuckles v. Brigano*, 70 F. App'x 830, 841 (6th

Cir. 2003); *Lloyd*, 2011 WL 6980846, at *7. *Cf. Taqwiim v. Johnson,* No. 99-3425, 2000 WL

1234322, at **3 (6th Cir. Aug. 22, 2000) (citing *Levine v. Torvik,* 986 F.2d 1506, 1517 n.8 (6th

Cir. 1993), and *Ylst,* 501 U.S. at 803-04).  Because it is thus clear from the record that the Ohio

courts relied on an adequate and independent state ground in overruling the delayed reopening

application, the undersigned concludes that petitioner procedurally defaulted the ineffective

assistance of appellate counsel claim that he has asserted as "cause" for the default of the

underlying double jeopardy claim alleged in Ground Seven.  Petitioner, therefore, is unable to

establish that his appellate counsel's ineffectiveness justifies excusing the procedural bar to

review in this case.

       Finally, petitioner has not demonstrated that failure to consider the claim alleged in

Ground Seven will result in a "fundamental miscarriage of justice," or in other words, that the

alleged error "probably resulted in the conviction of one who is actually innocent." *See Murray,*

477 U.S. at 495-96; *see also Schlup v. Delo,* 513 U.S. 298, 327 (1995).  Although petitioner has

contended that the evidence was insufficient to support his convictions on the weapons charge

and firearm specification, a colorable claim of actual innocence sufficient to excuse a procedural

default requires a showing of factual innocence, not mere legal insufficiency. *See House v. Bell,*

547 U.S. 518, 538 (2006); *Carter v. Mitchell,* 443 F.3d 517, 538 (6th Cir. 2006) (citing *Bousley*

*v. United States,* 523 U.S. 614, 623 (1998)); *Wright v. Lazaroff,* 643 F. Supp.2d 971, 989 (S.D.

---

[5]In his reply to the supplemental return of writ, petitioner relies on the Sixth Circuit's decision in *Franklin v. Anderson*, 434 F.3d 412 (6th Cir. 2006), as support for the argument that the time requirement set forth in Ohio R. App. P. 26(B) is not an adequate and independent state procedural rule. (Doc. 21, p. 8). However, the Sixth Circuit has made it clear in subsequent decisions that "the timeliness requirements of Rule 26(B) were firmly established and regularly followed by September 1998" and, therefore, "are an adequate and independent state procedural bar to review." *Landrum*, 625 F.3d at 934; *see also Hoffner*, 622 F.3d at 505 n.4 (specifically noting that the petitioner's reliance on *Franklin* was "misplaced" because in *Franklin*, "the Rule 26(B) motion was filed on June 30, 1993, one day before Rule 26(B) went into effect").

Ohio 2009) (Barrett, J.; Hogan, M.J.); *see also Vanwinkle v. United States,* 645 F.3d 365, 369 (6th Cir. 2011).

Accordingly, in sum, the undersigned concludes that the double jeopardy claim alleged in Ground Seven is procedurally defaulted because petitioner failed to raise the claim in the state direct appeal proceedings. Petitioner's argument that his appellate counsel's ineffectiveness constitutes "cause" for his default of the double jeopardy claim is unavailing because the ineffective assistance of appellate counsel claim is itself procedurally defaulted. In the absence of a showing of cause or that a fundamental miscarriage of justice will occur if the double jeopardy claim is not considered herein, Ground Seven of the amended petition is barred from review by this federal habeas Court and should be dismissed with prejudice.

**B. Petitioner Is Not Entitled To Relief Based On The Claims Alleged In Grounds One And Two Challenging The Denial Of His Motions For An Independent Expert and Independent Drug Analysis**

In Grounds One and Two of the petition, petitioner claims that the trial court erred, in violation of his due process right to a fair trial, when it denied both his motion for an independent drug analysis and his motion for appointment of an independent expert on the manufacture of methamphetamine. (Doc. 1, p. 21).

The record reflects that petitioner's original trial counsel first requested the appointment of an independent expert on January 26, 2010, the date the trial was initially scheduled to commence. (*See* Doc. 7, Trial Tr. 5-6). Counsel argued on the record that an expert, whom he identified as "Mr. Putnick," should be appointed because (1) counsel believed there was "a technical error in the report . . . from the county forensic lab" about the amount of methamphetamine found in the coffee filters; and (2) the defense needed "someone to testify or be able to counter the testimony of the State's expert on what constitutes the ingredients for methamphetamine." (*Id.*, Trial Tr. 6-7). The trial court denied the motion, reasoning as follows:

14

"It's a request made on the date of trial, set for trial anyway, and I don't think there's any showing that the issues you raised can't be adequately dealt with on cross-examination." (*Id.*, Trial Tr. 9-10).

Petitioner did not renew the motion for appointment of an independent expert or request an independent drug analysis until four days before the final trial date of April 13, 2010. At that juncture, petitioner was represented by new counsel, after petitioner's original counsel withdrew from the case and a mistrial was declared in the trial that was rescheduled to begin on February 10, 2010. In the motion for independent expert filed on April 9, 2010, petitioner's new counsel contended that an "independent expert would assist in Bowling's defense" because although the State's expert on methamphetamine production "has concluded one outcome by looking at the potential evidence, . . . it is highly probable that an independent expert will conclude another outcome." (*Id.*, Ex. 3). Although counsel did not set forth any reasons in support of the separate motion for independent analysis of substance that was also filed on April 9, 2010, he did argue at the trial proceeding held on April 13, 2010 that "we would like an independent analysis" of the methamphetamine amounts that were "detected, as the amounts stated are [de minimus] and there is a high probability for error based on that." (*See id.*, Ex. 4 & Trial Tr. 159).

The trial court denied the motions, as well as petitioner's additional request for yet another continuance of the trial date. (*See id.*, Trial Tr. 159-61). The court stated the following reasons for its decision on the record:

> The defendant is required to make a particularized – make a showing of a particularized need or a particularized probability that the requested evidence would aid in the defense and that the denial of such would result in an unfair trial, and I don't think there's been a particularized showing of either one made. So I'm going to deny those two motions.
>
> As to the motion for a continuance, I'm going to deny that as well. We have been set for trial by my count on at least two or three occasions already. And in this case we had selected a jury at one point when I granted Mr. Bowling's request for new counsel.

15

> And so I think at this point I don't think that it's appropriate to continue the trial, and, in fact, I think that these motions may be just simply submitted for the purposes of delay.

(*Id.*, Trial Tr. 161-62).

Petitioner challenged the denial of his motions for independent expert and independent drug analysis on direct appeal. The Ohio Court of Appeals, First Appellate District, considered the claims, which were asserted in separate assignments of error, together. Citing Ohio R. Crim. P. 12(D), the state appellate court overruled the assignments of error, reasoning as follows:

> According to the record, Bowling was indicted for the offenses on October 15, 2009, and the state served him with a copy of the crime laboratory's report on November 3, 2009. But Bowling did not submit his motion for an independent drug analysis and for the appointment of an independent expert until the day of trial. Even after a new trial had been scheduled, Bowling did not renew his motion until four days before the trial was to begin. We conclude that the motions were untimely, and that the trial court did not err when it denied them.

(*Id.*, Ex. 12, pp. 3-4) (foonote citation omitted).

Ohio R. Crim. P. 12(D) provides in pertinent part that "[a]ll pretrial motions except as provided in Crim. R. 7(E) and 16(M) shall be made within thirty-five days after arraignment or seven days before trial, whichever is earlier." Respondent contends in the return of writ that, because the Ohio Court of Appeals relied on that state procedural rule in overruling the assignments of error, petitioner procedurally defaulted and has waived the two claims for purposes of federal habeas review. (*See* Doc. 7, Brief, pp. 15-22). Respondent's argument has merit.

As discussed above in addressing the claim alleged in Ground Seven of the amended petition, it is well-settled that that the federal habeas court may be barred from considering an issue of federal law from a judgment of a state court if the judgment rests on a state-law ground that is both "independent" of the merits of the federal claim and an "adequate" basis for the state court's decision. *See Harris,* 489 U.S. at 260-62. If the last state court to issue a reasoned

16

decision addressing the claim denies relief by clearly and expressly enforcing an adequate and

independent state procedural rule, which was not complied with by the petitioner, then federal

habeas review is foreclosed absent a showing of cause for and prejudice from the petitioner's

default or that failure to consider the defaulted claim will result in a "fundamental miscarriage of

justice." *Hoffner*, 622 F.3d at 495 (citing *Maupin*, 785 F.2d at 138); *Johnson*, 493 F. App'x at

669. *See also Coleman*, 501 U.S. at 750; *Harris*, 489 U.S. at 262.

Here, it appears from the record that the filing requirement set forth in Ohio R. Crim. P.

12(D) applied to petitioner's pretrial motions for independent expert and independent drug

analysis and that petitioner failed to comply with that rule by belatedly filing his first request for

independent expert on the date that the trial was initially scheduled to begin and then waiting

until four days before the twice-continued trial date before filing his final set of motions. As

respondent has pointed out, the Ohio Court of Appeals was the last state court to issue a reasoned

decision addressing the claims asserted in Grounds One and Two of the petition. That court

clearly and expressly enforced the procedural sanction set forth in Ohio R. Crim. P. 12(D) in

overruling the assignments of error based on the finding that the motions were "untimely." (*See*

Doc. 7, Ex. 12, pp. 3-4). It is presumed that the Ohio Supreme Court's later unexplained order

denying petitioner leave to appeal and summarily dismissing the appeal "as not involving any

substantial constitutional question" relied on the same state procedural ground. *See, e.g.,*

*Taqwiim, supra,* 2000 WL 1234322, at *3 (citing *Ylst,* 501 U.S. at 803-04, and *Levine*, 986 F.2d

at 1517 n.8); *Pope v. Warden, Pickaway Corr. Inst.*, No. 1:11cv866, 2012 WL 5969669, at *18

(S.D. Ohio Nov. 29, 2012) (Bowman, M.J.) (Report & Recommendation) (and cases cited and

quoted therein), *adopted*, 2013 WL 811858 (S.D. Ohio Mar. 5, 2013) (Dlott, J.). No showing

has been made that the procedural sanction set forth in Ohio R. Crim. P. 12(D) did not constitute

an adequate, "firmly established" and "regularly followed," state ground for the state appellate

court's decision at the time that it was applied. *See Ford,* 498 U.S. at 423-24; *Richey,* 395 F.3d

at 679; *Rideau,* 342 F. App'x at 1002. Nor has petitioner demonstrated cause for his failure to

comply with Rule 12(D) or that a fundamental miscarriage of justice will result if the defaulted

claims alleged in Grounds One and Two of the petition are not considered herein.[6] Therefore, as

respondent has argued, it appears that petitioner has waived the two grounds for federal habeas

relief.

      In any event, even assuming, *arguendo,* that Grounds One and Two are subject to review

on the merits, petitioner has not demonstrated that he is entitled to relief based on such claims.

In this federal habeas case, petitioner is not entitled to relief unless it appears from the record that

the alleged errors had a "substantial and injurious effect or influence in determining the jury's

verdict." *Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993); *see also Fry v. Pliler,* 551 U.S. 112,

127 (2007) (the *Brecht* standard applies in federal habeas cases "whether or not the state

appellate court recognized the error and reviewed it for harmlessness"). Although petitioner has

generally contended that an independent expert and independent drug analysis would have aided

him in presenting a defense, no evidence has been presented as to what the substance of the

---

[6] It is noted that petitioner has contended as "cause" for his default that his trial attorneys were ineffective for failing to file timely motions, and his appellate counsel was ineffective for not raising the ineffective assistance of trial counsel claim as an assignment of error on direct appeal. (*See* Doc. 1, p. 25; Doc. 7, Ex. 14, pp. 8-10). As discussed above in addressing Ground Seven, a petitioner may be able to establish cause for a default based on an ineffective assistance of counsel claim, but only if the ineffective assistance of counsel claim was not itself procedurally defaulted. *See Edwards,* 529 U.S. at 452; *Landrum,* 625 F.3d at 934. Here, the ineffective assistance of trial counsel claim was defaulted by petitioner in the state courts because he did not raise it as an assignment of error on direct appeal. Although he presented the issue in a proposition of law on further appeal to the Ohio Supreme Court, the state supreme court lacked jurisdiction to entertain the claim that had not been raised or considered on direct appeal. *See State v. Williams,* 364 N.E.2d 1364, 1367 (Ohio 1977) (and cases cited therein), *vacated on other grounds,* 438 U.S. 911 (1978); *State v. Phillips,* 272 N.E.2d 347, 352 (Ohio 1971); *State v. Jones,* 211 N.E.2d 198, 199 (Ohio 1965); *see also Leroy,* 757 F.2d at 99; *Fornash v. Marshall,* 686 F.2d 1179, 1185 n.7 (6th Cir. 1982); *Kelley v. Smith,* No. 5:10cv731, 2013 WL 5221277, at *3, *7 & nn.47-48 (N.D. Ohio Sept. 17, 2013) (and cases cited therein); *Harsh v. Warden, Chillicothe Corr. Inst.,* 1:08cv433, 2009 WL 3378246, at *1, *9 n.8 (S.D. Ohio Oct. 15, 2009) (Beckwith, J.; Black, M.J.). Furthermore, although the state supreme court may have had jurisdiction to consider the corollary ineffective assistance of appellate counsel claim that was also asserted on further appeal to the Ohio Supreme Court, petitioner has not demonstrated that his appellate counsel was ineffective in the absence of any evidence in the record showing that "there is a reasonable probability that [the petitioner] would have prevailed on appeal had the [ineffective assistance of trial counsel] claim been raised" on direct appeal. *See Carter v. Wolfenbarger,* 347 F. App'x 205, 211 (6th Cir. 2009); *see also Valentine v. United States,* 488 F.3d 325, 338 (6th Cir. 2007) (quoting *McFarland v. Yukins,* 356 F.3d 688, 700 (6th Cir. 2004)).

independent expert's testimony would have been or whether the results obtained from an independent drug analysis would have even been favorable to the defense. Indeed, petitioner has conceded in his brief in reply to the return of writ that "because the evidence was never developed" as to whether or not an independent expert or drug analysis would have ultimately supported a defense theory, any determination about the potential prejudicial effect of the trial court's rulings on the jury would be purely speculative. (*See* Doc. 10, p. 5).

This Court's review is limited to the record before the state court. *See Cullen v. Pinholster*, __ U.S. __, 131 S.Ct. 1388, 1398 (2011). A review of the record reveals that petitioner's counsel was able to cross-examine both the State's expert witness and the analyst from the Coroner's Lab on the issues that he sought to highlight through an independent expert and independent drug analysis. (*See* Doc. 7, Trial Tr. 469-70, 527). Petitioner admitted to police that methamphetamine was in the coffee filters found in the car that he was driving. (*Id.*, Trial Tr. 415). It also appears from the record that other inculpatory evidence was presented to the jury—*i.e.*, a tape-recorded phone conversation between petitioner and another individual later arrested on a charge of "operating a mobile meth lab," which apparently indicated that "these two [were] working together." (*See id.*, Trial Tr. 478-83, 490-96, 545). In the absence of any evidence in the record to suggest that an independent expert or an independent drug analysis would have added to the defense's case in any material exculpatory way, the undersigned concludes upon review of the entire record, including the evidence of guilt that was presented at trial, that the trial court's denial of petitioner's motions for independent expert and independent drug analysis did not prejudice the defense and certainly did not have a substantial effect or influence on the jury's verdict.

Accordingly, in sum, in the absence of a showing of cause or a fundamental miscarriage of justice, petitioner procedurally defaulted and has waived the claims alleged in Grounds One

and Two of the petition because he failed to comply with Ohio R. Crim. P. 12(D), and the last

state court to issue a reasoned decision addressing those claims expressly relied on that adequate

and independent state ground in overruling the claims of error on direct appeal. In any event, in

light of the evidence of guilt that was presented at trial and the lack of any evidence in the record

suggesting that the granting of petitioner's pretrial motions for independent expert and

independent drug analysis would have resulted in the admission of additional material

exculpatory evidence, any error by the trial court in denying those motions was harmless under

*Brecht*. Therefore, petitioner is not entitled to federal habeas relief based on the claims alleged

in Grounds One and Two of the petition.

   **C. Petitioner Is Not Entitled To Relief Based On The Sentencing Error Claim
       Alleged In Ground Five Of The Petition**

   In Ground Five of the petition, petitioner alleges that the trial court erred when it imposed

the maximum sentence of consecutive prison terms totaling twelve (12) years without making

specific findings about the seriousness of the offenses. (Doc. 1, pp. 23-24). Petitioner also

contends that the trial court, knowing he had twice refused a plea offer with a recommended six-

year sentence, acted improperly because "it appears the [twelve-year] sentence was based, at

least in part, on a desire to punish the defendant for exercising his right to trial." (*Id.*).

   As an initial matter, it appears that petitioner procedurally defaulted and has waived the

claim alleged in Ground Five because he failed to provide the Ohio Supreme Court with an

opportunity to consider the specific issues that he has raised in the ground for relief. The

arguments presented in Ground Five were asserted by petitioner in his fifth assignment of error

on appeal to the Ohio Court of Appeals. (*See* Doc. 7, Ex. 10, pp. 11-12). However, petitioner

failed to reassert them in any of his propositions of law on further appeal to the Ohio Supreme

Court. (*See id.*, Ex. 14). Instead, petitioner opted to reassert another separate claim, presented in

his sixth assignment of error to the Ohio Court of Appeals, challenging the consecutive sentences

that were imposed in accordance with a remedy adopted in *State v. Foster*, 845 N.E.2d 470 (Ohio 2006), to cure what the state supreme court believed were constitutional defects in Ohio's sentencing statutes. (*See id.*, Ex. 10, pp. 13-14; Ex. 14, p. 8).[7]

To satisfy the habeas statute's fair presentation requirement, the petitioner must present both the factual and legal bases of his claim or, in other words, "the same claim under the same theory" to the state courts. *Gross v. Warden, Lebanon Corr. Inst.*, 426 F. App'x 349, 355 (6th Cir. 2011) (quoting *Hicks v. Straub*, 377 F.3d 538, 552-53 (6th Cir. 2004)). "It is not sufficient that all the facts necessary to support the federal claim were before the court or that the petitioner made a 'somewhat similar' state-law claim." *Id.* Here, the sentencing error claim that petitioner presented as a proposition of law for consideration by the Ohio Supreme Court is not based on the same legal theory asserted in Ground Five of the petition and as support for his fifth assignment of error on direct appeal. Because a claim for habeas relief must be presented to the state's highest court in order to satisfy the fair presentation requirement, *see O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 848 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall*, 757 F.2d 94, 97, 99-100 (6th Cir. 1985), it appears that the claim alleged in Ground Five is procedurally barred from review by this Court.

In any event, even assuming that the claim alleged in Ground Five was fairly presented to the state courts, petitioner has not demonstrated that he is entitled to federal habeas relief based on the merits of such claim. Petitioner specifically contends that the trial court abused its discretion by crafting a sentence based on improper considerations of the amount of evidence against him and his rejection of a plea agreement rather than an appropriate assessment of the

---

[7] It is noted that in the return of writ, respondent has also addressed the sentencing error claim alleged in the sixth assignment of error, which petitioner has responded to in his reply to the return of writ. (*See* Doc. 7, Brief, pp. 38-41; Doc. 10, p. 11). However, that is not the claim that has been alleged in Ground Five of the petition. In any event, even assuming petitioner also contends in the instant action that his sentence imposed in accordance with the Ohio Supreme Court's *Foster* decision is unconstitutional under *Oregon v. Ice*, 555 U.S. 160 (2009), the claim lacks merit. *See Scott v. Warden, Southern Ohio Corr. Facility*, No. 1:12cv118, 2013 WL 2096641, at *5-9 (S.D. Ohio May 14, 2013) (Bowman, M.J.) (Report & Recommendation), *adopted*, 2013 WL 5728675 (S.D. Ohio Oct. 22, 2013) (Bertelsman, J.).

seriousness of the offenses, which petitioner has categorized as "low." (*See* Doc. 1, pp. 23-24).

The Ohio Court of Appeals was the only state court to consider and issue a reasoned decision

addressing that claim.  Applying the standard of review set forth in a cited Ohio Supreme Court

decision, the court overruled the assignment of error, reasoning as follows:

> Our review of Bowling's sentences has two parts.  First, we must determine
> whether the sentences were contrary to law.  Then, if the sentences were not
> contrary to law, we must review the sentences to determine whether the trial court
> abused its discretion in imposing them.
>
> The sentences imposed by the court were within the applicable sentencing ranges
> for the offenses.  And contrary to Bowling's assertion, there is no indication in the
> record that the court was objectively unreasonable toward him or that the court
> penalized him for exercising his right to a jury trial.  We conclude that the trial
> court did not abuse its discretion.

(Doc. 7, Ex. 12, p. 5) (footnote citations to *State v. Kalish*, 896 N.E.2d 124 (Ohio 2008),

omitted).

In this federal habeas case, the Court's review of petitioner's ground for relief is limited.

First, the Court has jurisdiction to review petitioner's claim only to the extent that petitioner

challenges his confinement based on an alleged violation of the Constitution, laws or treaties of

the United States, and not "on the basis of a perceived error of state law."  28 U.S.C. § 2254(a);

*Pulley v. Harris,* 465 U.S. 37, 41 (1984); *see also Wilson v. Corcoran,* _ U.S. _, 131 S.Ct. 13,

16 (2010) (quoting *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991)) ("it is not the province of a

federal court to reexamine state-court determinations on state-law questions").  Because habeas

review is limited to claims implicating federal concerns, this Court lacks jurisdiction to consider

any claim that the trial court erred under Ohio law in determining that the imposition of

maximum, consecutive sentences was warranted in this case.  *Cf. Sneed v. Donahue*, 993 F.2d

1239, 1244 (6th Cir. 1993) (holding that a claim challenging the state prisoner's aggregate prison

sentence "involves a matter of state law," which "is not cognizable in a federal habeas corpus

proceeding").

Second, to the extent that petitioner's claim implicates federal constitutional concerns, this Court may not issue a writ of habeas corpus unless the state appellate court's adjudication of the constitutional issues either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

Here, petitioner has asserted that the trial court imposed the maximum sentence to punish him for exercising his constitutional right to a trial by jury instead of accepting the plea bargains that had been offered him. The Ohio Court of Appeals reasonably concluded that the record does not support such a contention. At the sentencing hearing, no mention was made of the fact that petitioner had rejected two plea offers. (*See* Doc. 7, Trial Tr. 605-12). Although the prosecutor, a testifying police officer and the court generally alluded to petitioner's failure to "take responsibility" for his actions, there is simply no evidence in the record to suggest that those comments referred to petitioner's rejection of the plea offers as opposed to his failure to acknowledge his involvement in any offense involving methamphetamine, both past and present, despite his prior extensive record of arrests and convictions on the same types of charges. (*See id.*). The trial court determined that the twelve-year sentence requested by the prosecution was warranted in light of petitioner's "extensive prior record, particularly his prior record for this exact offense;" the "overwhelming" evidence of guilt that was presented at trial; and the fact that petitioner had "taken no responsibility for showing remorse or anything else." (*Id.*, Trial Tr. 609-10, 611-12). As the Ohio Court of Appeals reasonably found, the court's stated reasons do not reflect that petitioner's refusal to accept the plea offers played any part in the determination of sentence. Nor do the reasons that were given by the court for imposing the aggregate twelve-

23

year sentence trigger any other constitutional concerns.  *Cf. United States v. Grayson*, 438 U.S. 41, 50 (1978) (acknowledging that the court "may legitimately consider the evidence heard during trial, as well as the demeanor of the accused" in determining the appropriate sentence).

Finally, to the extent that petitioner contends that constitutional concerns under the Eighth Amendment's Cruel and Unusual Punishment Clause are implicated given the harshness of the sentence in relation to the offenses, his claim lacks merit.  It is well-established under the applicable Supreme Court precedents that the Eighth Amendment contains a "narrow proportionality principle," which "'does not require strict proportionality between crime and sentence' but rather 'forbids only extreme sentences that are grossly disproportionate to the crime.'"  *See Graham v. Florida*, 560 U.S. 48, 130 S.Ct. 2011, 2021 (2010) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 997, 1000-01 (1991) (Kennedy, J., concurring in part and concurring in judgment)) (internal quotation marks contained within quoted language omitted); *see also United States v. Moore*, 643 F.3d 451, 454 (6th Cir. 2011) (and Supreme Court cases cited therein).  "A defendant challenging his sentence under the Eighth Amendment has a tremendously difficult burden to meet," given that "[i]n the last century, the Supreme Court has struck down only a handful of non-capital sentences under the Eighth Amendment, and those cases have been egregious in the extreme."  *United States v. Hughes*, 632 F.3d 956, 959 (6th Cir.), *cert. denied*, 131 S.Ct. 2975 (2011).

Here, petitioner has not shown that the consecutive terms of imprisonment imposed in this case were so egregious that they amount to cruel and unusual punishment.  Indeed, as the Supreme Court pointed out in *Graham*, the Supreme Court has "rejected a challenge to a sentence of 25 years to life for the theft of a few golf clubs" under a three-strikes recidivist sentencing statute, and has "also upheld a sentence of life with the possibility of parole for a defendant's third nonviolent felony, the crime of obtaining money by false pretenses, . . . and a

sentence of 40 years for possession of marijuana with intent to distribute and distribution of marijuana." *Graham*, 130 S.Ct. at 2021-22 (citing *Ewing v. California*, 538 U.S. 11 (2003); *Lockyer v. Andrade,* 538 U.S. 63 (2003); *Rummel v. Estelle*, 445 U.S. 263 (1980); *Hutto v. Davis*, 454 U.S. 370 (1982) (per curiam)). The Supreme Court cases cited in *Graham* all posed much closer questions of proportionality between crime and sentence than the case-at-hand, involving separate sentences within the statutory range for two drug offenses, a firearm specification, and weapons offense.

Accordingly, in sum, it appears that the sentencing error claim alleged in Ground Five of the petition is barred from review because petitioner did not provide the Ohio Supreme Court with an opportunity to consider the specific claim. In any event, the undersigned concludes that petitioner's state-law claim challenging the imposition of maximum, consecutive sentences is not cognizable in this habeas proceeding. In addition, petitioner has not demonstrated that the Ohio Court of Appeals' adjudication of the constitutional issues alleged in Ground Five is subject to reversal under the deferential standard of review set forth in 28 U.S.C. § 2254(d) or that the sentences imposed in this case trigger any proportionality concerns under the Eighth Amendment's Cruel and Unusual Punishment Clause. Therefore, Ground Five of the petition should be denied with prejudice.

### D. Petitioner Is Not Entitled To Relief Based On The Claims In Grounds Three And Four Challenging The Sufficiency Of Evidence Supporting His Convictions On The Firearm Specification And Weapons Charge

In Ground Three of the petition, petitioner contends that the evidence presented at trial was insufficient to support his conviction for having a weapon while under disability. (Doc. 1, p. 22). In Ground Four, he claims that the evidence presented at trial was also insufficient to support his conviction on the firearm specification attached to the aggravated drug possession count. (*Id.*, pp. 22-23). Both claims, which were fairly presented on appeal to both the Ohio

Court of Appeals and Ohio Supreme Court, are subject to review on the merits.

In this federal habeas case, the applicable standard of review governing the state courts' adjudication of petitioner's sufficiency of evidence claims is set forth in 28 U.S.C. § 2254(d). Under that provision, a writ of habeas corpus may not issue with respect to any claim adjudicated on the merits by the state courts unless the adjudication either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Otte v. Houk,* 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000)), *cert. denied*, 132 S.Ct. 1743 (2012). "A state court's adjudication only results in an 'unreasonable application' of clearly established federal law when 'the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* at 599-600 (quoting *Williams,* 529 U.S. at 413).

The statutory standard, established when the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) was enacted, is a difficult one for habeas petitioners to meet. *Id.* at 600. As the Sixth Circuit explained in *Otte*:

> Indeed, the Supreme Court has been increasingly vigorous in enforcing AEDPA's standards. *See, e.g., Cullen v. Pinholster,* __ U.S. __, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011) (holding that AEDPA limits a federal habeas court to the record before the state court where a claim has been adjudicated on the merits by the state court). It is not enough for us to determine that the state court's

> determination is *incorrect*; to grant the writ under this clause, we must hold that the state court's determination is *unreasonable*. . . . This is a "substantially higher threshold.". . . To warrant AEDPA deference, a state court's "decision on the merits" does not have to give any explanation for its results, *Harrington v. Richter,* __ U.S. __, 131 S.Ct. 770, 784, 178 L.Ed.2d 624 (2011), nor does it need to cite the relevant Supreme Court cases, as long as "neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam).

*Id.* (emphasis in original). The Supreme Court recently extended its ruling in *Harrington* to hold that when a state court rules against a defendant in an opinion that "addresses some issues but does not expressly address the federal claim in question," the federal habeas court must presume, subject to rebuttal, that the federal claim was "adjudicated on the merits" and thus subject to the "restrictive standard of review" set out in § 2254(d). *See Johnson v. Williams,* __ U.S. __, 133 S.Ct. 1088, 1091 (2013).

Although the standard is difficult to meet, § 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington,* 131 S.Ct. at 786. In other words, to obtain federal habeas relief under that provision, the state prisoner must show that the state court ruling on the claim presented "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

The Supreme Court has made it clear that in assessing the merits of a constitutional claim under § 2254(d), the federal habeas court must apply the Supreme Court precedents that controlled at the time of the last state-court adjudication on the merits, as opposed to when the conviction became "final." *Greene v. Fisher,* __ U.S. __, 132 S.Ct. 38, 44-45 (2011); *cf. Otte,* 654 F.3d at 600 (citing *Lockyer v. Andrade,* 538 U.S. 63, 71-72 (2003)) (in evaluating the merits of a claim addressed by the state courts, the federal habeas court must "look to Supreme Court cases

27

already decided at the time the state court made its decision"). In *Greene*, 132 U.S. at 44, the

Court explained:

> [W]e held last term in *Cullen v. Pinholster*, 563 U.S. __, 131 S.Ct. 1388, 179
> L.Ed.2d 557 (2011), that review under § 2254(d)(1) is limited to the record that
> was before the state court that adjudicated the prisoner's claim on the merits. We
> said that the provision's "backward-looking language requires an examination of
> the state-court decision at the time it was made." *Id.*, at __, 131 S.Ct. at 1398. The
> reasoning of *Cullen* determines the result here. As we explained, § 2254(d)(1)
> requires federal courts to "focu[s] on what a state court knew and did," and to
> measure state-court decisions *as of 'the time the state court renders its decision.'"*
> *Id.*, at __, 131 S.Ct. at 1399 (quoting *Lockyer v. Andrade*, 538 U.S. [at] 71-72 . . .;
> emphasis added).

Decisions by lower courts are relevant "to the extent [they] already reviewed and

interpreted the relevant Supreme Court case law to determine whether a legal principle or right

had been clearly established by the Supreme Court." *Otte*, 654 F.3d at 600 (quoting *Landrum v.*

*Mitchell*, 625 F.3d 905, 914 (6th Cir. 2010), *cert. denied*, 132 S.Ct. 127 (2011)). The writ may

issue only if the application of clearly-established federal law is objectively unreasonable "in

light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of

the relevant state court decision." *McGhee v. Yukins*, 229 F.3d 506, 510 (6th Cir. 2000) (citing

*Williams*, 529 U.S. at 412).

In this case, the Ohio Court of Appeals was the only state court to issue a reasoned

decision addressing the merits of petitioner's assignments of error challenging the sufficiency of

the evidence. The court addressed the two claims together and ruled as follows:

> Bowling was convicted of having a weapon while under a disability in violation
> of R.C. 2923.13(A)(3). That section provides that "[u]nless relieved from
> disability as provided in section 2923.14 of the Revised Code, no person shall
> knowingly acquire, have, carry, or use any firearm *** if *** [t]he person is
> under indictment for or has been convicted of any offense involving the illegal
> possession, use, sale, administration, distribution, or trafficking in any drug of
> abuse[.]" The gun specification required that the state prove that Bowling "had a
> firearm on or about [his] person or under [his] control while committing the
> offense." Bowling conceded at trial that he was under a disability due to a prior
> conviction. But he now contends that the state did not present sufficient evidence
> that he had knowingly possessed an operable firearm.

28

The state presented evidence that the shotgun had been found in plain view with its muzzle resting on the passenger headrest of a two-door car. This evidence was sufficient to show that the gun was in Bowling's constructive possession. Further MacMurdo testified that, although he had initially been unable to cycle the gun, he was able to get the gun to function within a few seconds. MacMurdo's testimony was sufficient to show that the gun was a firearm that could "readily be rendered operable." We conclude that the state presented sufficient evidence of the offense and the specification. The third and fourth assignments of error are without merit.

(Doc. 7, Ex. 12, pp. 4-5) (footnote citations to state statutory provisions omitted).

The Ohio Court of Appeals did not cite or refer to any standard of review governing its resolution of the due process issues raised by petitioner in challenging the sufficiency of the evidence. The applicable standard of review for deciding whether the evidence presented against a criminal defendant passes constitutional scrutiny was established by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In that case, the Court held that because the Due Process Clause requires the State to prove beyond a reasonable doubt every fact necessary to constitute the charged offense, *In Re Winship,* 397 U.S. 358, 363-64 (1970), "the relevant question" in assessing the sufficiency of the evidence "is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319 (emphasis in original).

The State is not required under the Due Process Clause to rule out every hypothesis except that of guilt beyond a reasonable doubt. *Id.* at 326. Rather, "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume– even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.*; *see also Walker v. Engle,* 703 F.2d 959, 969-70 (6th Cir. 1983). It is the responsibility of the trier of fact to resolve conflicts in testimony, to weigh the evidence and to draw reasonable inferences from the

evidence. *Jackson,* 443 U.S. at 319. Consequently, the reviewing court is not permitted to reweigh the evidence, reevaluate the credibility of witnesses, make its own subjective determination of guilt or innocence, or otherwise substitute its opinion for that of the jury. *See id.* at 318-19 & n.13; *see also United States v. Fisher,* 648 F.3d 442, 450 (6th Cir. 2011) (citing *Brown v. Konteh,* 567 F.3d 191, 205 (6th Cir. 2009)); *York v. Tate,* 858 F.2d 322, 329 (6th Cir. 1988) (per curiam).

"Circumstantial evidence alone is sufficient to support a conviction." *Newman v. Metrish,* 543 F.3d 793, 796 (6th Cir. 2008) (quoting *Johnson v. Coyle,* 200 F.3d 987, 992 (6th Cir. 2000)); *see also Fisher,* 648 F.3d at 450. Due process is satisfied as long as such evidence is enough for a rational trier of fact to make a permissible *inference* of guilt, as opposed to a reasonable *speculation* that the petitioner is guilty of the charged crime. *Newman,* 543 F.3d at 796-97 (and Sixth Circuit cases cited therein).

Federal habeas review of a claim challenging the sufficiency of the evidence is even further limited. As the Supreme Court explained in *Coleman v. Johnson,* __ U.S. __, 132 S.Ct. 2060, 2062 (2012) (per curiam):

> *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. . . ." *Cavazos v. Smith,* 565 U.S. 1, __, 132 S.Ct. 2, 4, 181 L.Ed.2d 311 (2011) (*per curiam*). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett,* 559 U.S. 766, __, 130 S.Ct. 1855, 1865, 176 L.Ed.2d 678 (2010)).

*See also Brown,* 567 F.3d at 205 (the federal habeas court is "bound by two layers of deference to groups who might view facts differently than [the habeas court] would"). In other words, the federal habeas court must defer not only to the trier of fact's findings as required by *Jackson,* but under 28 U.S.C. § 2254(d), must also "defer to the *state appellate court's* sufficiency

determination as long as it is not unreasonable." *Brown,* 567 F.3d at 205 (emphasis in original); *see also Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011), *cert. denied,* 132 S.Ct. 1927 (2012).

Therefore, as the Sixth Circuit went on to emphasize in *Brown*:

> [W]e cannot rely simply upon our own personal conceptions of what evidentiary showings would be sufficient to convince us of the petitioner's guilt. We cannot even inquire whether *any* rational trier of fact would conclude that petitioner . . . is guilty of the offenses for which he was charged. Instead, we must determine whether the Ohio Court of Appeals itself was unreasonable in *its* conclusion that a rational trier of fact could find [the petitioner] guilty beyond a reasonable doubt based on the evidence introduced at trial.

*Brown,* 567 F.3d at 205 (emphasis in original).

Applying the double-layer deferential standard to the case-at-hand, the undersigned concludes that the Ohio Court of Appeals' sufficiency determinations are neither contrary to nor an unreasonable application of *Jackson*.

As the Ohio Court of Appeals pointed out in addressing the weapons-under-disability offense, petitioner does not contest that he was under a disability when stopped by the police. He contends, however, that the evidence was insufficient to establish his guilt for that offense, as well as the firearm specification attached to the aggravated drug possession count, because no evidence was introduced showing that he "was aware the shot gun was in the car" or that the firearm was operable. (Doc. 1, pp. 22-23).

Under Ohio law, a person can be found guilty for having a weapon while under disability based on evidence showing that he was in constructive possession of a firearm. *See, e.g., State v. Cherry,* 870 N.E.2d 808, 811 (Ohio Ct. App. 2007); *State v. Teague,* No. 2011-T-0012, 2012 WL 764433, at *8 (Ohio Ct. App. Mar. 12, 2012) (citing *State v. Bartee,* No. 25266, 2010 WL 4970900, at *2 (Ohio Ct. App. Dec. 8, 2010)); *State v. Najeway,* No. 21264, 2003 WL 21396687, at *2 (Ohio Ct. App. June 18, 2003) (and cases cited therein). "Constructive possession exists when an individual exercises dominion and control over an object, even though the object may

not be within his immediate physical possession." *Cherry*, 870 N.E.2d at 811 (quoting *State v. Wolery*, 348 N.E.2d 351, 360 (Ohio 1976)). Actual ownership of the weapon is not a prerequisite for establishing the possession element of the offense. *Najeway*, *supra*, 2003 WL 21396687, at *2; *see also Bartee, supra*, 2010 WL 4970900, at *2; *State v. Dorsey*, No. 04AP-737, 2005 WL 1119613, at *8 (Ohio Ct. App. May 12, 2005). Similarly, to establish guilt on a firearm specification, it must be shown that the defendant had a "firearm under his control during the commission of the underlying drug possession offense." *See State v. Benton*, No. 82810, 2004 WL 1352843, at *2-5 (Ohio Ct. App. June 17, 2004) (and cases cited therein). Generally, the requirement is satisfied by a showing that the firearm was either carried on the defendant's person or was "conveniently accessible within his/her immediate physical reach." *Id.* at *3.

Here, it was not unreasonable for the Ohio Court of Appeals to conclude that sufficient evidence was presented to establish petitioner's constructive possession and control of the shotgun found in the rear of the two-door car. Officer MacMurdo testified that at the time of the stop, petitioner was the sole occupant of the car and that the gun was in "plain view," positioned "long ways" across the back seat "with the muzzle . . . resting right next to the head rest" of the front passenger side of the vehicle. (Doc. 7, Trial Tr. 348, 445, 449-51). The state appellate court reasonably determined that a rational juror could infer on the basis of that testimony alone that petitioner was both aware of and exercised dominion and control over the firearm found in the vehicle he was driving. *Cf. Teague, supra*, 2012 WL 764433, at *9 (constructive possession established based on evidence that the defendant was operating a motor vehicle in which firearms were found that were "ready at hand or within the defendant's access"); *Bartee, supra*, 2010 WL 4970900, at *3 (constructive possession established in case where the defendant was driving the vehicle, and the firearm found on the floorboard of the passenger side of the car was "in plain view and clearly visible" and "was easily accessible" to the defendant); *State v.*

*Campbell*, No. 2004CA00176, 2005 WL 435145, at *4 (Ohio Ct. App. Feb. 22, 2005)

(constructive possession established in case where the defendant was the sole occupant of the

vehicle at the time of the stop, and the firearm was found next to his seat).

With respect to petitioner's contention about the operability of the firearm that was

retrieved from the car, both the firearm specification and the weapons-under-disability count

require that the defendant have a "firearm" in his possession or under his control.  Ohio Rev.

Code § 2923.11(B)(1) defines "firearm" as "any deadly weapon capable of expelling or

propelling one or more projectiles by the action of an explosive or combustible propellant,"

including "an unloaded firearm, and any firearm that is inoperable but that can readily be

rendered operable."   Here, it was not unreasonable for the Ohio Court of Appeals to determine

that sufficient evidence was presented at trial to establish that the shotgun found in the car was a

"firearm" within the meaning of that provision.  As the state appellate court found, evidence was

presented that although Officer MacMurdo initially was unable to get the shot gun to "cycle"

because the "bolt had fallen back and the hammer was in front of the bolt," when he had the time

to take a "closer look" at the gun, he was able to make it "function" and rendered it "operable"

within a matter of a "couple [of] seconds." (*See* Doc. 7, Trial Tr. 374, 433-34).  In addition,

Harrison police detective Norb Koopman testified that he had "test fired" the weapon.  He said

that the barrel was "clear" and that when he loaded the shotgun, the "weapon fired immediately"

without his having "to perform any manipulation to the gun to get it to operate." (*Id.*, Trial Tr.

471-42, 475-77).  A rational juror could infer from this testimony that the shotgun was a

"firearm" within the meaning of Ohio Rev. Code § 2923.11(B)(1) because, even if initially

inoperable, it could "readily be rendered operable."

In his reply to the return of writ, petitioner has cited other evidence in the record tending

to undermine MacMurdo's testimony that the shotgun was in "plain view" and was "readily

rendered operable." (*See* Doc. 10, pp. 7-9). However, under *Jackson*, the reviewing court was precluded from reweighing the evidence and was required to defer to the jury's resolution of the conflicts in the evidence in favor of the prosecution. *See Jackson*, 443 U.S. at 318-19 & n.13, 326; *see also Fisher*, 648 F.3d at 450. Therefore, it was reasonable for the state appellate court to determine in accordance with *Jackson*'s deferential standard of review that a rational juror could find petitioner was guilty of both the weapons offense and the firearm specification based on the evidence presented at trial, which supported the State's position that petitioner, as the driver and sole occupant of the car, was both aware of and had control over the shotgun found in the vehicle and that the gun was "readily rendered operable" and thus a "firearm" within the meaning of Ohio Rev. Code § 2923.11(B)(1).

Accordingly, in sum, the undersigned concludes that petitioner has not demonstrated that he is entitled to habeas relief based on his claims in Grounds Three and Four of the petition challenging the sufficiency of the evidence supporting his convictions for having a weapon while under disability and the firearm specification attached to the aggravated drug possession charge.

### E.  Petitioner Procedurally Defaulted And Has Waived The Ineffective Assistance Of Trial Counsel Claims, And Is Not Entitled To Relief Based On Any Claims Challenging The Effectiveness Of His Appellate Counsel, That Are Alleged In Ground Six

In Ground Six of the petition, petitioner alleges that his Sixth Amendment right to the effective assistance of counsel was violated by all of his attorneys in the state proceedings. (Doc. 1, pp. 23-24). Specifically, petitioner contends that his trial attorneys provided ineffective assistance by failing to file timely pretrial motions for an independent drug analysis and independent expert on the manufacture of methamphetamine, for failing to request an independent expert on the firearm's operability, for failing to request the suppression of certain evidence, and for failing to call Christina Polley as a witness to testify in petitioner's defense that the property found in the car belonged to her. (*Id.*). In his reply to the return of writ, petitioner

states that he is also claiming in Ground Six that his appellate counsel was ineffective for failing to raise a claim challenging the effectiveness of his trial counsel in an assignment of error on direct appeal. (Doc. 10, p. 12).

Petitioner concedes in his reply to the return of writ that he procedurally defaulted the claims in Ground Six challenging the effectiveness of his trial attorneys. (Doc. 10, p. 12). As noted above in addressing the claims alleged in Grounds One and Two of the petition, *see supra* p. 18 n.6, the ineffective assistance of trial counsel claims were defaulted by petitioner in the state courts because he did not raise them on direct appeal. Although he alleged his trial counsel was ineffective in a proposition of law on further appeal to the Ohio Supreme Court, the state supreme court lacked jurisdiction to entertain those issues, which had not been raised or considered on direct appeal. *See, e.g., State v. Williams,* 364 N.E.2d 1364, 1367 (Ohio 1977) (and cases cited therein), *vacated on other grounds,* 438 U.S. 911 (1978); *State v. Phillips,* 272 N.E.2d 347, 352 (Ohio 1971); *State v. Jones,* 211 N.E.2d 198, 199 (Ohio 1965). *See also Leroy,* 757 F.2d at 99; *Fornash v. Marshall,* 686 F.2d 1179, 1185 n.7 (6th Cir. 1982); *Kelley v. Smith,* No. 5:10cv731, 2013 WL 5221277, at *3, *7 & nn.47-48 (N.D. Ohio Sept. 17, 2013) (and cases cited therein); *Harsh v. Warden, Chillicothe Corr. Inst.*, 1:08cv433, 2009 WL 3378246, at *1, *9 n.8 (S.D. Ohio Oct. 15, 2009) (Beckwith, J.; Black, M.J.).

Petitioner contends that his corollary ineffective assistance of appellate counsel claim is not defaulted and is subject to review by this Court because the Ohio Supreme Court had jurisdiction to address that particular issue asserted for the first time on further appeal from the Ohio Court of Appeals. (*See* Doc. 10, p. 12). Assuming, without deciding, that petitioner's ineffective assistance of appellate counsel claim was not defaulted and is subject to review on the merits, petitioner has not demonstrated that he is entitled to federal habeas relief based on such claim.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court held that in order to establish constitutionally ineffective assistance of counsel under the Sixth Amendment, a petitioner must show both (1) his "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See Valentine v. United States*, 488 F.3d 325, 331 (6th Cir. 2007) (quoting *Strickland*, 466 U.S. at 688, 694). The two-prong *Strickland* standard applies to petitioner's ineffective assistance of appellate counsel claim. *See id.* at 338.

In the appellate context, it is well-settled that counsel is not ineffective under the first prong of the *Strickland* test for failing to raise every non-frivolous argument. *Carter v. Wolfenbarger,* 347 F. App'x 205, 211 (6th Cir. 2009) (citing *Jones v. Barnes,* 463 U.S. 745, 751 (1983)); *see also Friday v. Pitcher,* 99 F. App'x 568, 575 (6th Cir. 2004) (quoting *Buell v. Mitchell,* 274 F.3d 337, 352 (6th Cir. 2001)) ("appellate counsel was not deficient for failing to raise on direct appeal nonfrivolous claims after deciding as a matter of professional judgment not to raise those points"). Rather, the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray,* 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751-52); *see also Coleman v. Mitchell,* 268 F.3d 417, 430-31 (6th Cir. 2001). Although it is possible to satisfy the first prong of the *Strickland* test based on a claim challenging counsel's failure to raise a particular issue on direct appeal, "[g]enerally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Smith v. Robbins,* 528 U.S. 259, 288 (2000) (quoting *Gray v. Greer,* 800 F.2d 644, 646 (7th Cir. 1986)); *see also Wilson v. Hurley,* 108 F. App'x 375, 379 (6th Cir. 2004). "If there is a reasonable probability that [the petitioner] would have prevailed on

appeal had the claim been raised," the Court then must consider "whether the claim's merit was so compelling that appellate counsel's failure to raise it amounted to ineffective assistance of appellate counsel." *Carter*, 347 F. App'x at 211. The inquiry involves an assessment of whether the underlying ineffective assistance of trial counsel claim "had a reasonable probability of success." *Valentine*, 488 F.3d at 338; *see also Carter*, 347 F. App'x at 211 ("In short, as goes [the petitioner's] trial IAC claim, so goes his appellate IAC claim.").

Here, petitioner has not demonstrated that his appellate counsel's failure to raise claims challenging the effectiveness of his trial attorneys on direct appeal amounted to ineffective assistance under the two-prong *Strickland* test because he has not shown that there is a reasonable probability that he would have prevailed on appeal had any of the underlying ineffective assistance of trial counsel claims been raised.

As discussed above in addressing the claims alleged in Grounds One and Two of the petition, there is simply no evidence in the record to substantiate petitioner's claim that an independent expert on the manufacture of methamphetamine or an independent drug analysis would have provided petitioner with any evidence favorable to the defense or would have otherwise affected the outcome of the trial. Similarly, there is no evidence in the record to substantiate any claim that an independent expert on the operability of the firearm would have assisted the defense. In the absence of such evidence, petitioner is unable to demonstrate that it is reasonably probable that he would have prevailed on his claims challenging his trial attorneys' failure to file timely pretrial motions requesting the appointment of the independent experts and independent drug analysis.

In addition, petitioner has not shown that there is a reasonable probability the outcome of the appeal proceeding would have been different if his appellate counsel had asserted a claim challenging his trial attorneys' failure to seek the suppression of one piece of evidence on the

ground that it did not match a store receipt. Even assuming that the one item of evidence should have been suppressed at trial, it is highly unlikely that the Ohio Court of Appeals would have found that the omission on trial counsel's part prejudicially affected the outcome of the trial under the second prong of the *Strickland* test. Other items used to manufacture methamphetamine, which were purchased and found in the car that petitioner was driving, were properly introduced into evidence to establish petitioner's guilt. Moreover, additional inculpatory evidence was introduced at trial, including petitioner's admission to police that methamphetamine was in the coffee filters found in the car. (*See* Doc. 7, Trial Tr. 414, 478-83, 490-96, 545). In light of the other evidence of guilt that was properly admitted at trial, petitioner is unable to demonstrate that the underlying ineffective assistance of trial counsel claim was "so compelling that appellate counsel's failure to raise it amounted to ineffective assistance of appellate counsel," *Carter*, 347 F. App'x at 211, or that the underlying claim "had a reasonable probability of success" on appeal. *See Valentine*, 488 F.3d at 338; *Carter*, 347 F. App'x at 211.

Finally, it is unlikely that petitioner would have prevailed on appeal on any claim that his trial counsel was ineffective for failing to call Christina Polley as a defense witness. Petitioner has not shown that trial counsel's decision to not call a witness, who may have been subjected to a cross-examination that would have revealed further incriminatory evidence against petitioner, fell outside the wide range of reasonable professional assistance. Although petitioner has contended that Polley would have testified that the property found in the car belonged to her, that testimony would not have been particularly helpful to the defense. As discussed above in addressing petitioner's claims challenging the sufficiency of the evidence, petitioner could still be found guilty on the criminal charges based on the findings that, as the driver and sole occupant of the vehicle at the time of the stop, he had constructive possession and control of the items found in the car. Therefore, given that the underlying ineffective assistance of trial counsel

lacks merit, petitioner is unable to prevail on any claim that his appellate counsel was ineffective for failing to assert it as an assignment of error on direct appeal.

Accordingly, in sum, the undersigned concludes that petitioner procedurally defaulted and has waived the ineffective assistance of trial counsel claims alleged in Ground Six of the petition. To the extent that petitioner's corollary ineffective assistance of appellate counsel claim is subject to review on the merits, petitioner has not demonstrated that he is entitled to relief based on such claim. Therefore, Ground Six of the petition should be denied with prejudice.

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, as amended (Docs. 1, 15), be **DENIED** with prejudice.

2. A certificate of appealability should not issue with respect to the claims alleged in the petition, as amended, which this Court has concluded are waived and thus procedurally barred from review, because under the first of the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), "jurists of reason" would not find it debatable whether this Court is correct in its procedural ruling.[8] In addition, a certificate of appealability should not issue with respect to the claims alleged in the petition, which have been reviewed on the merits, in the absence of a substantial showing that petitioner has stated a "viable claim of the denial of a constitutional right" or that the issues presented are "adequate to deserve encouragement to proceed further." *See Slack,* 529 U.S. at 475 (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)); *see also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and, therefore, should

---

[8] Because the first prong of the *Slack* test has not been met, the Court need not address the second prong of *Slack* as to whether "jurists of reason" would find it debatable whether petitioner has stated a viable constitutional claim in any of the defaulted grounds for relief. *See Slack,* 529 U.S. at 484.

**DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See*

Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date: _11/5/13_

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

DUAYNE BOWLING,                          Case No. 1:12-cv-183
     Petitioner,

    vs.                                Spiegel, J.
                                        Litkovitz, M.J.

WARDEN, LONDON
CORRECTIONAL INSTITUTION,
     Respondent.


## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations.   This period may be extended further by the Court on

timely motion for an extension.  Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections.  If the Report

and Recommendation is based in whole or in part upon matters occurring on the record at an oral

hearing, the objecting party shall promptly arrange for the transcription of the record, or such

portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs.  A party may respond to another party's objections

**WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in

accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140

(1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

cbc

41

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X ☑ Agent ☐ Addressee

B. Received by ( *Printed Name* ) | C. Date of Delivery

1. Article Addressed to:

Dvayne Bowling # 627-791
London Corr. Inst.
PO Box 69
1580 State Route 56
London, OH 43140

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☑ Certified Mail ☐ Express Mail
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? *(Extra Fee)* ☐ Yes

2. Article Number
*(Transfer from service label)*    7011 3500 0001 5345 9626

PS Form 3811, February 2004       Domestic Return Receipt       102595-02-M-1540